IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No.  CR-05-1192-PHX-GMS |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| Michael Nicholas Malich, | ) | |
| Defendant. | ) | |

TO THE HONORABLE G. MURRAY SNOW, U. S. DISTRICT JUDGE:

Upon Defendant's denial of the allegations that he violated conditions of supervised release, the presiding District Judge referred this matter to the undersigned to conduct an evidentiary hearing. On January 17, 2013, the Court conducted this evidentiary hearing; received evidence in the form of the testimony of the supervising Probation Officer, the Defendant, and the Defendant's roommate. The Court now issues this Report and Recommendation.

The December 12, 2012 Petition alleges in Allegation A that Mr. Malich violated standard condition number 9 which prohibited the possession of any paraphernalia related to controlled substances and the Petition further alleges in Allegation B that he violated special condition number 1 which required that he comply with substance abuse testing.

With respect to the allegation that the Defendant possessed drug paraphernalia, the Defendant's Supervising Probation Officer, Eva Duran, testified that during a home visit on November 14, 2012, she observed on a counter or cabinet in the hallway of Mr. Malich's

1  apartment a scale, a pipe, a bong, and a bag of 2 x 2 inch plastic baggies. In addition, a glass
2  pipe was found wedged between cushions on a sofa in the living room. At the time of the
3  Probation Officers' arrival at Mr. Malich's home (Officer Duran was joined by Probation
4  Officer James Thiessen) it was observed that a visitor was sitting on the sofa where the glass
5  pipe was located. Officer Duran testified that it was her impression that as Mr. Malich escorted
6  her through the home he walked in an awkward way between her and the drug paraphernalia
7  located in the hallway which appeared for the purpose of trying to obstruct her view of the drug
8  paraphernalia. Defendant's underlying criminal conviction is for possession with intent to
9  distribute methamphetamine which resulted in a 60-month sentence. Since his release from
10 custody, the Offender's supervising history includes an admission that he used
11 methamphetamine on several dates in 2011. Following that admission he was placed at the
12 Recovery Homes residential substance abuse treatment facility and he was successfully
13 discharged from that program on June 7, 2012.
14      Regarding the drug paraphernalia allegations, the Probation Officer also testified that a
15 2 x 2 inch plastic baggie identical to the baggies found next to the scale was found in a bag
16 belonging to the Offender. Mr. Malich testified that the drug paraphernalia did not belong to
17 him, that he had no idea whom it belonged to, but that his roommate might know the identity
18 of the owner. At the evidentiary hearing, the roommate testified that he had no idea who owned
19 the drug paraphernalia and that he had never seen drug paraphernalia in the apartment.
20      During this home visit the Offender was directed to provide a urine sample for drug
21 analysis and he was unable to produce the requested sample notwithstanding the fact that when
22 the Probation Officers arrived Mr. Malich asked for the opportunity to go to the bathroom
23 indicating that he needed to defecate. Ms. Duran requested that he "hold it" which he
24 apparently did for the two hours of the Probation Officers' visit. Approximately 20 minutes
25 before the Probation Officers departed, Mr. Malich was directed to provide a urine sample. At
26 first he indicated that he could not produce a sample in the presence of the male Probation
27 Officer. He was then given the opportunity to urinate in private. Officer Duran testified that
28

- 2 -

based upon the odor emanating from the bathroom it was her impression that he had defecated. When Mr. Malich told the probation officers that he could not produce a urine sample, he was directed to report to the United States Probation Office at 8:00 AM the following morning to produce a urine sample. Mr. Malich did not appear as directed but instead presented to TASC at 5:05 PM that day and produced a urine sample which was negative.

Mr. Malich argued that the government's failure to produce scientific evidence such as fingerprint or DNA analysis linking him to the drug paraphernalia, which he testified he asked the responding police officers to undertake, constitutes a failure of proof that precludes a finding that the government has met its burden of proof. The government on the other hand argued that the totality of circumstances, defendant's past history of substance abuse and history of avoiding drug use detection by using a false penis and bladder (as reported in the Presentence Report at p. 3) create a sum of evidence which makes the allegation of possession of drug paraphernalia more likely than not.

The Court did not find Mr. Malich credible because of his frequent failures to comply with the required drug testing at the required time and the excuses he offered which strained credibility. Moreover, Mr. Malich's testimony that he did not observe the drug paraphernalia in the house because he had only recently returned home that day from work and that his focus was exclusively on the television program "The X Factor" which he testified he never missed, strains credibility especially in light of the fact that the glass pipe was found in the living room where presumably the television was. In contrast, the Court found the testifying Probation Officer to be credible given that her testimony was never successfully impeached.

The absence of direct evidence linking Mr. Malich to the drug paraphernalia found in the common areas of his apartment is made less significant by the presence of an identical baggie found within his personal control and the fact that he appears to have avoided producing a urine sample at the time of the home visit and at the time directed for the first thing next morning. The Offender's failure to produce the required urine sample at the home visit and at 8:00 AM the following morning as required suggests that Defendant was seeking to avoid producing a

1  potentially positive result – this is something he would likely do only if he feared a positive test
2  arising from the use of the drug paraphernalia that was found in his home.  This Court believes
3  that the government has met its burden of proof with respect to the allegation that the Defendant
4  possessed drug paraphernalia.

5           Allegation B alleges that the Defendant violated special condition number 1 which
6  required that he participate as instructed by the Probation Officer in a program of substance
7  abuse treatment which included that he appear for drug testing as required.  It is alleged that he
8  failed to submit to drug testing as directed on May 11, July 5, August 3 and November 14, 2012.
9  Probation Officer Duran testified that she received information from TASC, the Court's drug
10 testing and treatment contractor,  informing her that Mr. Malich did not appear for the required
11 drug testing on May 11.  She testified that she contacted Mr. Malich who was adamant that he
12 had appeared for testing and that he would provide a receipt.  She testified that he never
13 provided the promised receipt. With respect to the July 5 allegation, the Probation Officer again
14 received notice from TASC that the Offender failed to appear for a required drug test.  When
15 she contacted Mr. Malich, he informed her that the air conditioner at his place of employment
16 had broken and that he had gone to work later and stayed later during that day and thus missed
17 the testing.  The officer testified that there was nothing that precluded the Offender from
18 appearing at her office at 8:00 AM or to appear at TASC  after it opened at 10:00 AM – all
19 times which afforded sufficient time for Mr. Malich to test before he reported to work at 1:35
20 PM that day.  The Officer further testified that Mr. Malich failed to appear for his August 3 drug
21 test and that when she contacted him regarding this failure to appear, he offered no explanation.
22 The November 14 allegation arises from the above-described failure to produce a urine
23 specimen during the home visit on that day.  The Offender argued that the time he was given
24 for providing a urine sample at his apartment was unreasonably short.  The Court does not
25 accept this argument in light of the fact that the Offender had not used the bathroom for nearly
26 two hours prior to the time of the requested sample and that it appears more likely than not that
27 he did use the bathroom to defecate during the time frame when he was requested to produce

1 a urine sample. The Court concludes that it is not unreasonable to have expected the offender
2 to produce a urine sample at the same time that he produced a bowel movement under the
3 described circumstances.

4       In response to the allegation that he missed drug testing on May 11, the Defendant
5 testified that he had provided a sample at the halfway house facility on that day, but again he
6 provided no proof. Mr. Malich does not challenge his failure to present for the drug testing on
7 the other days but instead argues that it was unreasonable to require him to present as directed.
8 He further argues that his overall compliance with the vast majority of drug testing as well as
9 the negative results produced in those tests should excuse the alleged violation. He also
10 appeared to argue that the Probation Officer's occasional willingness to allow Mr. Malich to
11 "makeup" missed drug testing should excuse his failure to comply with the testing at issue in
12 the petition. The Court finds that the government has met its burden of proof by showing by
13 a preponderance of the evidence that the Offender failed to appear as directed for the drug
14 testing specified in allegation B. In each case the required testing was consistent with the
15 authority granted to the Probation Officer under the terms of his supervision and the evidence
16 produced during the hearing does not suggest or compel the conclusion that the required testing
17 was unreasonable. Nor should a probation officer's willingness to work with an Offender and
18 allow an accommodation that may forego the filing of a petition ever be deemed a waiver of
19 strict compliance with the conditions of supervised release.

20       Accordingly, the undersigned RECOMMENDS that the District Judge conclude that Mr.
21 Malich violated his conditions of supervised release as alleged in allegation A and allegation
22 B of the petition.

23       This recommendation is not an order that is immediately appealable to the Ninth Circuit
24 Court of Appeals. Any notice of appeal pursuant to Rule 4(b)(1), Federal Rules of Appellate
25 Procedure, should not be filed until entry of the district court's judgment. The parties shall have
26 fourteen days from the date of service of a copy of this recommendation within which to file
27 specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rule 59(b)(2), Federal
28

- 5 -

Rules of Criminal Procedure. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Judge without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 59, Federal Rules of Criminal Procedure.

DATED this 22nd day of January, 2013.

_____
David K. Duncan
United States Magistrate Judge